### HENDRICKSON *v.* WRIGHT and others.[1]

*(Circuit Court, E. D. Pennsylvania.   April 22, 1886.)*

CHARTER-PARTY—SHIP-BROKERS.

> A. & Co. were the ship's agents at New York. They, through H. & M., ship-brokers in Philadelphia, applied to C. & Co. for an offer. Terms were agreed upon, and put in writing. The charter-party was then read over by the agent of C. & Co., and marked, in order that any member of the firm might know it was all right, and sign it without reading it through. It was then handed to H. & M., who sent it to A. & Co. for execution. A. & Co. made an alteration in it, signed it, and returned it to H. & M. with instructions to call C. & Co.'s attention to the alteration. H. & M. took the charter-party to C. & Co., and left it with a clerk, but said nothing about the change. One of the firm, relying upon the mark, signed the charter-party without noticing the alteration. Soon after C. & Co. learned of the change, and immediately refused to be bound by the charter-party. *Held*, that H. & M. were the agents of the ship, not of C. & Co.; that their default or fraud was imputable to their principals; and that the charter-party could not be sustained.

In Admiralty.   See 6 Fed. Rep. 526.
*Flanders & Pugh*, for libelants.
*H. G. Ward* and *M. P. Henry*, for respondents.

McKENNAN, J.   This suit is brought to recover damages for the refusal by the respondents to fulfill a charter-party alleged to have been

---

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

entered into between them and French, Edge & Co., as agents of the Russian bark Hero, on the twenty-seventh day of August, 1879. In August, 1879, the bark Hero was at Carthagena, awaiting employment. French, Edge & Co. were her agents at New York, having authority to charter her. They "gave" her to Hoffman & Meyer, ship-brokers of Philadelphia, to obtain a charter for her there. Hoffman & Meyer applied to the respondents for an offer, which they made; but stated, as an indispensable condition of their engagement of the vessel, that she should sail promptly from Carthagena, and this was communicated to French, Edge & Co. After some negotiation between Mr. Young, who had charge of that department of the business of the respondents, and Mr. Hoffman, of Hoffman & Meyer, a charter-party was agreed upon on the twenty-seventh day of August, 1879, and a blank form was accordingly filled up, embodying its terms, by a clerk in the respondents' office. It contained a stipulation that the vessel should "proceed promptly to Philadelphia, to enter upon the performance of this charter-party." It was then examined by Mr. Young, and was ready for signature without further examination. It was therefore "ticked" by Mr. Young, by writing a private mark upon it, which indicated to the members of the firm that it had been examined and approved by Mr. Young, and required no further examination. This was fully understood by Mr. Hoffman, who testified that he was informed of the import and object of Mr. Young's mark, and that it was placed upon the paper "so that Mr. Neall, or any other member of the firm, could sign it without reading it through," and he knew, also, that the respondents would execute it only in its approved form. It was afterwards sent to Hoffman & Meyer, who, on the twenty-eighth of August, took it to New York to procure its execution by French, Edge & Co. They insisted upon a change in the paper touching the time of departure of the vessel from Carthagena, and were told by Hoffman & Meyer that if it was so changed the respondents would not sign it. French, Edge & Co., however, after the word "promptly" interlined the word, "to-wit, in about a fortnight;" and on the thirtieth of August sent the charter by mail to Hoffman & Meyer, to have it executed by respondents. On the same day they instructed Hoffman & Meyer to call the attention of the respondents to the alteration, and to say that they insisted upon its insertion.

On September 1, 1879, Mr. Meyer called at the office of the respondents, in the absence of Mr. Young, and left the charter-party with Mr. Engleman, a clerk of the respondents, to have their signature affixed to it; but did not state to him that any change had been made in the original draft. It was handed afterwards to Mr. Neall, a member of the firm, and he, upon the faith of Mr. Young's mark of approval upon it, affixed the name of the firm to it without reading it. It was then sent back to Hoffman & Meyer to have copies made of it. Upon the return of the copies, several days afterwards, the respondents discovered that change which had been made in their

approved draft of the charter-party, and at once notified French, Edge & Co. that they would not be bound by it as it stood.

Hoffman & Meyer were not the agents of respondents in this transaction. They were not employed or compensated by them. From the beginning they acted avowedly as the representatives of French, Edge & Co. At the instance of the latter, they initiated the negotiation with the respondents; solicited an offer from the respondents for the employment of the ship; treated with them touching the terms of the charter, under the instructions of their avowed principals; and, in every step of the negotiation, the respondents acted for themselves, and they as the representatives of an adverse interest. Hence French, Edge & Co. were their principals, and not the respondents, and their default or fraud is imputable to their principals.

Upon this statement of facts, I am of opinion that the libel cannot be sustained; but as the whole case is very clearly and fully discussed in the opinion of the learned judge of the district court, the decree of that court is affirmed for the reasons stated in that opinion, and the libel is now here dismissed, with costs.